UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONALD C. GUIDRY, SR., ET AL.             CIVIL ACTION

VERSUS                                 NO. 18-6660

ALLSTATE FIRE CASUALTY          SECTION "R" (4)
INSURANCE COMPANY, ET AL.

## <u>ORDER AND REASONS</u>

Before the Court is defendants' motion to dismiss five of the nine claims asserted by plaintiffs.[1]  The Court finds that plaintiffs have failed to state a claim upon which relief can be granted for retaliation, unfair trade, breach of contract, and tortious interference with contract.  These claims are dismissed with prejudice, except for plaintiffs' breach of contract claim, which is dismissed without prejudice.  The Court finds that plaintiffs have adequately pleaded a claim for conversion.

## I.      BACKGROUND

This case arises out of defendant Allstate Fire Casualty Insurance Company's alleged termination of plaintiff Ronald C. Guidry's employment.[2]

---

[1]      R. Doc. 17.
[2]      R. Doc. 1-2.

Guidry and plaintiff Ronald C. Guidry, Sr., Agency Corporation (the Guidry Agency) allege that on December 1, 2000 they entered into an Exclusive Agency Agreement with Allstate.[3] The agreement was between Allstate and the Guidry Agency, and executed by Guidry on behalf of the Agency.[4] Guidry is named in the agreement as a "Key Person."[5] The agreement authorized the Guidry Agency to receive and accept applications for Allstate insurance coverage in Louisiana.[6] The agreement further authorized the Guidry Agency to sell Allstate insurance products on Allstate's behalf.[7]

In April 2009, Guidry was allegedly diagnosed with prostate cancer.[8] He alleges that he underwent prostate surgery on October 8, 2009.[9] Plaintiffs also allege that as a result of Guidry's medical condition and surgery, he has been "plagued with a myriad of symptoms including frequent urination," which "requires him to leave his desk multiple times throughout

---

[3]    *Id.* at 6 ¶ 4.

[4]    R. Doc. 17-2 at 1. The Court may consider the contents of the agency agreement because it was incorporated into the complaint by reference. *See Maurer v. Town of Independence, Louisiana*, No. 13-5450, 2015 WL 893481, at *5 (E.D. La. Mar. 2, 2015).

[5]    R. Doc. 17-2 at 2.

[6]    *Id.* at 1.

[7]    *Id.*

[8]    R. Doc. 1-2 at 6 ¶ 6.

[9]    *Id.*

the day to relieve himself."[10]  On October 31, 2017, defendant Eric Stone, Guidry's "territorial sales leader,"[11] notified Guidry via letter that the agency agreement was to be terminated, effective January 31, 2018.[12]  In the letter, Stone states that Allstate was taking this action "for reasons that include lack of office availability."[13]  Plaintiffs contest the factual basis of Allstate's alleged explanation for his termination.[14]  Plaintiffs assert that Guidry maintained office hours beyond the 9 a.m. to 5 p.m. hours that are required of Allstate's agents.[15]  Allstate allegedly refused to provide any additional information regarding its finding that Guidry's "lack of office availability" justified his termination.[16]  On December 4, 2017, Guidry filed a formal grievance with the Equal Employment Opportunity Commission (EEOC).[17]

Upon Guidry's termination, the Guidry Agency was allegedly given the opportunity to either accept a termination payment from Allstate or sell its economic interest in its book of business to a buyer that was to be

---

[10]     *Id.* ¶ 9.
[11]     *Id.* ¶ 10.
[12]     *Id.* ¶ 12.
[13]     R. Doc. 17-5 at 1.
[14]     R. Doc. 1-2 at 7 ¶¶ 16-17.
[15]     *Id.*
[16]     *Id.* ¶ 18.
[17]     *Id.* ¶ 19.

preapproved by Allstate.[18]  In addition, the Guidry Agency was told that it could sell any insurance policies it may own, or retain them and receive the commission on the retained policies after the agency agreement was terminated.[19]  Guidry allegedly "opted to retain" the insurance policies he owned.[20]  In January 2018, prior to his termination date, Guidry allegedly attempted to sell his book of business to another insurance agent that Stone had "previously approved."[21]  Guidry's request was allegedly denied.[22]  Finally, the policies that Guidry had intended to maintain were allegedly transferred to other Allstate agents without his authorization.[23]  Plaintiffs have accordingly not received any of the commissions allegedly due to them under the policies they intended to retain.[24]

On February 21, 2018, the EEOC issued Guidry a Notice of Right to Sue.[25]  Plaintiffs then timely filed this lawsuit in state court on May 18, 2018, against Allstate, Stone, and Eric Caminita, Guidry's sales manager who was

---

[18]     *Id.* at 6 ¶ 13; R. Doc. 17-5 at 1-2.
[19]     R. Doc. 1-2 at 7 ¶ 14; R. Doc. 17-5 at 2.
[20]     R. Doc. 1-2 at 7 ¶ 15.
[21]     *Id.* ¶ 20.
[22]     *Id.*
[23]     *Id.* ¶ 21.
[24]     *Id.* at 7-8 ¶ 22.
[25]     *Id.* at 8 ¶ 26.

appointed by Stone.[26]    Plaintiffs initially asserted claims for (1) discrimination under the Americans with Disabilities Act (ADA); (2) discrimination under Title VII of the Civil Rights Act of 1964; (3) derivation of civil rights and conspiracy under 42 U.S.C. § 1981; (4) conspiracy to interfere with civil rights under 42 U.S.C. § 1985; (5) retaliation; (6) breach of contract; (7) unfair trade practices; and (8) tortious interference with contract.[27]    On September 13, 2018, plaintiffs filed a supplemental and amended complaint adding a claim for conversion.[28]    Plaintiffs seek compensatory and punitive damages, as well as attorneys' fees and costs.[29] On October 10, 2018, defendants moved to dismiss plaintiffs' claims for retaliation, breach of contract, unfair trade, tortious interference with contract, and conversion.[30]  Defendants have not moved to dismiss the other four claims.[31]

---

[26]    *Id.* at 1.
[27]    *Id.* at 8-12.
[28]    R. Doc. 15.
[29]    R. Doc. 1-2 at 12 ¶ 51.
[30]    R. Doc. 17.
[31]    *Id.*

5

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true.  *Iqbal*, 556 U.S. at 678.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Id*.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257.  The claim must be dismissed if there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is

apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## III. DISCUSSION

### A. Retaliation

Plaintiffs do not specify in their complaint whether they bring their retaliation claim under state or federal law.[32]  In plaintiffs' opposition to defendants' motion to dismiss, plaintiffs cite law relevant only to a retaliation claim under Title VII.[33]  But plaintiffs' freestanding retaliation claim in their complaint could also encompass claims under the ADA, the Louisiana employment discrimination statute, and the Louisiana whistleblower statute.  The Court will thus address whether plaintiffs have plausibly alleged a claim for retaliation under any of these statutes.

First, to the extent the complaint states a claim for retaliation on behalf of both plaintiffs, that claim fails as to the Guidry Agency because the Agency is not an "individual" that can sue for retaliation.  *See, e.g.*, 42 U.S.C. §

---

[32]     R. Doc. 1-2 at 11.
[33]     R. Doc. 22 at 1-5.

2000e(f) (explaining that Title VII's protections extend only to "employees," which are defined as "individual[s] employed by an employer").

Guidry's retaliation claim also fails because any of the statutes under which his claim could be cognizable do not recognize a cause of action if the plaintiff is an independent contractor, rather than an employee. *See id.*; *Craft-Palmer v. State Farm Ins. Co.*, 157 F.3d 903, 1998 WL 612388, at \*1 (5th Cir. Aug. 27, 1998) (insurance agent designated as independent contractor could not state a claim for retaliation under Title VII); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 n.2 (5th Cir. 2015) (viewing the employer/employee analysis as interchangeable between Title VII and the ADA because of the "substantial overlap in the analytical framework among the employment discrimination statutes"); *Montgomery v. Lobman, Carnahan, Batt & Angelle*, 729 So. 2d 1075, 1077 (La. App. 4 Cir. 1999) (noting that Louisiana courts consider federal interpretations of Title VII when determining whether an individual is an "employee" under the state employment discrimination statute); *Delahoussaye v. Livingston Parish, Louisiana*, No. 12-481, 2014 WL 4538074, at \*3 (M.D. La. Sept. 11, 2014) (finding that an independent contractor could not state a claim under the Louisiana whistleblower statute).

In determining whether an employment relationship exists, the Fifth Circuit applies a "hybrid economic realities/common law control test." *Deal v. State Farm Cty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118-19 (5th Cir. 1993).[34] The most important component of this analysis is whether the employer had the "right to control the employee's conduct." *Id.* at 119. Whether an employer had this requisite control turns on "whether the alleged employer ha[d] the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.* The "economic realities component" of the analysis focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.*

Here, the agency agreement explicitly stated that the relationship between Allstate and the Guidry Agency—and thus the Agency's members— was "that of an independent contractor," not an employer/employee relationship.[35] The agreement further provided that the Guidry Agency had

> sole and exclusive control over its labor and employee relations policies, and its policies relating to wages, hours, and working

---

[34]    Because the analysis for whether an employment relationship exists is identical under federal and state law, *Montgomery*, 729 So. 2d at 1077, the Court's application of federal principles applies equally to plaintiff's claims made under Louisiana law.

[35]    R. Doc. 17-2 at 1.

conditions of its employees. [The Guidry Agency] has the sole and exclusive right to hire, transfer suspend, lay off recall promote, assign, discipline, and discharge its employees.[36]

This contractual relationship is nearly identical to the facts in *Craft-Palmer*, where the Fifth Circuit held that an insurance agent designated as an independent contractor in an agency contract was not an "employee" under Title VII. *See* 1998 WL 612388, at *1. The Fifth Circuit emphasized that not only was the plaintiff designated as an independent contractor, but also that the defendant insurance company controlled "no details of the manner or means in which [the plaintiff] execute[d] her business, [ran] her office, determine[d] her work schedule or clients, or hire[d] or fire[d] employees." *Id.* Like the contract in *Craft-Palmer*, the agreement here contemplates that the Guidry Agency has the "sole and exclusive control" over how it manages its office.[37] Guidry was therefore not an employee of Allstate, and he cannot maintain a claim for retaliation. *See id.* (citing *Oestman v. Nat'l Farmers Ins. Co.*, 958 F.2d 303 (10th Cir. 1992), and *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377 (7th Cir. 1991)).

---

[36]     *Id.* at 3.
[37]     *Id.*

Plaintiffs concede that Guidry was solely responsible for operating the business.[38]  But plaintiffs argue that Guidry nonetheless "would likely qualify" as an employee under Title VII because (1) he did not have control of his schedule or "complete autonomy in his workspace;" (2) the Guidry Agency's telephone number was Allstate's property; (3) the agency agreement contained a provision restricting him for a period of one year after his termination from soliciting services in competition with Allstate's products within a certain geographical area; and (4) the Guidry Agency could not sell any other type of insurance during the pendency of the agreement without Allstate's approval.[39]  But none of these requirements or restrictions renders Guidry an employee of Allstate rather than an independent contractor, as the agreement provides.  *See id.* ("[T]hat State Farm furnishes insurance forms, provides life insurance and major medical insurance, can accept or reject a prospective policy holder, and required [the plaintiff] to be an exclusive agent are minor matters and not determinative.").  The Court's inquiry is not whether Allstate placed some restrictions on Guidry, but whether Allstate controlled the "means and manner" of how he performed

---

[38]     *See* R. Doc. 22 at 3.
[39]     *Id.* at 3-4.

his work. *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985) (quoting *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979)). Because the agency agreement makes clear that the Guidry Agency had sole control over the operations of its office, Guidry cannot be considered an "employee." The Court thus finds that dismissal of plaintiffs' retaliation claim with prejudice is warranted.

## B. Breach of Contract

### 1. *Standing*

Plaintiffs allege in conclusory fashion that defendants breached the terms of the agency agreement.[40] Defendants contend that (1) Stone and Caminita are not parties to the agency agreement, which requires the breach of contract claim to be dismissed as it relates to them; and (2) Guidry does not have standing to assert a breach of the agreement because he was not a party to it.[41] Because Stone and Caminita were not parties to the agency agreement, plaintiffs cannot assert a breach of contract claim against them. Plaintiffs' claim is thus dismissed with respect to them.

---

[40] R. Doc. 1-2 at 11 ¶ 45.
[41] R. Doc. 17-1 at 7.

But Guidry does have standing to assert a claim for breach of contract. The Guidry Agency, not Guidry himself, is the party to the agency agreement,[42] although Guidry can maintain a breach of contract claim if he is considered a third-party beneficiary of the agreement. *See Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 939 So. 2d 1206, 1212 (La. 2006). Under Louisiana law, there are three criteria for determining whether the contracting parties provided a benefit to a third party entitling the third party to bring a claim for breach of contract: (1) the contract must contain a stipulation for the third party that is "manifestly clear;" (2) "there is certainty as to the benefit provided" to the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promise. *Id.* Additionally, a third-party beneficiary relationship "is never presumed. The party claiming the benefit bears the burden of proof." *Id.* (citing La. Civ. Code art. 1831).

Here, the agency agreement refers to Guidry directly many times, and identifies him as a "Key Person."[43] The agreement provides that Allstate was entering into the agreement "in reliance upon and in consideration of the

---

42      R. Doc. 17-2 at 1.
43      *Id.* at 2.

skills, qualifications, and representations of Ronald Guidry."[44]  The Guidry

Agency promised to "employ [Guidry] to provide services under th[e]

Agreement," and that Guidry will "remain actively involved in the conduct of

business at [the Guidry Agency's] sales location."[45]  The agreement also

stipulates that it would terminate upon Guidry's death, his permanent

incapacity, if Guidry left the Guidry Agency, or if Guidry were to lose his

agent license.[46]  Finally, the agreement provides that if the Guidry Agency

were to dissolve, Allstate is authorized to pay any money owed to the Agency

to Guidry directly.[47]

Guidry was thus not merely incidental to the agreement; his

engagement with the Guidry Agency was the explicit reason Allstate entered

into the agreement, and it lasted only as long as Guidry was with the

Agency.[48]  The agreement entirely depended upon Guidry's participation in

the Agency.  Any benefits conferred on the Agency during the lifetime of the

---

[44]    *Id.*
[45]    *Id.* at 2-3.
[46]    *Id.* at 8.
[47]    *Id.* at 9.
[48]    *Id.* at 2 ("This Agreement is being entered into with [the Guidry Agency] in reliance upon and in consideration of the skills, qualifications, and representations of Ronald Guidry."); *id.* at 8 (providing that the agreement would terminate if Guidry left the Guidry Agency).

agreement would thus necessarily benefit Guidry as well. Even more, the agreement explicitly contemplates that monetary benefits owed to the Guidry Agency could be paid to Guidry directly in the event the Agency dissolved.[49] This provision expresses a clear intent to benefit Guidry individually, and not merely the Agency. *Navarrete v. Gen. Ins. Co. of Am.*, No. 07-4865, 2008 WL 659477, at *2 (E.D. La. Mar. 7, 2008) (insurance contract manifested intent for plaintiff to benefit by stating that "amounts payable in excess of [contracting party's] interest will be paid to the [plaintiff]"). Guidry therefore has standing to assert a claim for breach of contract.

This determination is consistent with the Louisiana Supreme Court's holding in *Joseph*. *See* 939 So. 2d at 1214-15. In *Joseph*, the defendant hospital entered into a contract with St. Mary Anesthesia Associates, Inc. (SMAA) for the purposes of obtaining general anesthesia services for the hospital's patients. *Id.* at 1209. The court ultimately found that the individual doctors who comprised SMAA did not have standing to sue the hospital for a breach of the agreement, even though the terms of the contract recognized some of the plaintiff doctors as medical specialists capable of

---

[49]     *Id.* at 9.

providing anesthesia services. *Id.* at 1214-15. The court reached this conclusion because the contract did not provide that the plaintiff doctors themselves had the exclusive right to provide the hospital the services contemplated in the contract. *Id.* at 1214. That right was instead granted to SMAA itself; in other words, the contract did not depend on the participation of the plaintiff doctors. Here, Guidry's participation in the Guidry Agency is the explicit reason Allstate entered into the agreement, and his departure from the Agency would terminate the agreement. There is thus no daylight in the agreement between any benefit conferred on the Gudiry Agency and the benefit conferred on Guidry individually. And unlike in *Joseph*, the agreement here confers an additional benefit on Guidry by stipulating that Allstate can pay Guidry money owed under the agreement in the event the Agency dissolves.

### 2. *Failure to State a Claim*

Defendants also argue that plaintiffs' breach of contract claim should be dismissed in its entirety because plaintiffs fail to identify in the complaint a contractual provision that Allstate allegedly breached.[50] In their complaint, plaintiffs allege in conclusory fashion that "[d]efendants, all of them,

---

[50]     R. Doc. 17-1 at 7-9; R. Doc. 1-2 at 11 ¶¶ 45-46.

breached the Allstate R3001C exclusive agency agreement."[51]  To state a claim for breach of contract, "a plaintiff must allege a breach of a specific provision of the contract." *Blackstone v. Chase Manhattan Mortg. Corp.*, 802 F. Supp. 2d 732, 738 (E.D. La. 2011) (citing *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2003)); *see also Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, No. 11-2002, 2012 WL 1698365, at *9 (E.D. La. May 15, 2012) (rejecting breach of contract affirmative defense because defendants did not "allege a breach of a specific provision of the contract").  Plaintiffs fail to identify in their complaint how defendants breached the agency agreement.  They do not allege which specific provision of the agreement was breached.  As a result, plaintiffs' claim must be dismissed.  *Louque*, 314 F.3d at 782.

In their opposition brief, plaintiffs assert that Allstate breached a provision contained in the supplement to the agency agreement.[52]  The agency agreement expressly incorporates the terms of the supplement as part of the agreement.[53]  This new information in plaintiffs' opposition brief constitutes new factual allegations that were left out of their complaint.

---

[51]    R. Doc. 1-2 at 11 ¶ 45.
[52]    R. Doc. 22 at 6-7.
[53]    R. Doc. 17-2 at 1.

Unlike new claims or legal theories that are included in an opposition to a dispositive motion, the Court is not obligated to treat new factual allegations as a request for leave to amend the complaint, unless plaintiffs explicitly request leave to amend and state the particular grounds upon which the amendment is sought. *Pierce*, 600 F. App'x at 200 n.6. Plaintiffs do not explicitly request leave to amend their complaint in their opposition brief, nor do they state why they would have grounds to amend. Accordingly, the Court will not consider the new factual allegations contained in plaintiffs' opposition brief. Plaintiffs' breach of contract claim is thus dismissed without prejudice. Plaintiffs may seek leave of the Court to file a second amended complaint with a revised claim for breach of contract.

### C. Unfair Trade

Plaintiffs allege that defendants' actions violate the "unfair trade provision of Louisiana law."[54] The Court construes this allegation as stating a claim under the Louisiana Unfair Trade Practice and Consumer Protection Act (LUTPA). *See* La. R.S. 51:1401, *et seq.* Defendants have moved to dismiss this claim, and plaintiffs do not defend the claim in their opposition to defendants' motion.

---

[54] R. Doc. 1-2 at 7 ¶ 47.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A). The statute provides a cause of action to "any person, natural or juridical, who suffers an ascertainable loss" as a result of another person's violation of the statute. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1057 (La. 2010); *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018). Standing to state a claim under LUTPA is not limited to consumers or business competitors of the defendant. *Id.*

To recover, the plaintiff "must prove some element of fraud, misrepresentation, deception or other unethical conduct." *IberiaBank*, 907 F.3d at 839 (internal quotations omitted). A practice is unfair under LUTPA only when "the practice offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id.* (internal quotations omitted); *see also Monroe v. McDaniel*, 207 So.3d 1172, 1180 (La. App. 5 Cir. 2016) ("[T]he range of prohibited practices under LUTPA is extremely narrow and includes 'only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct.'" (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060

(La. 2010))). "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *IberiaBank*, 907 F.3d at 839.

Plaintiffs do not specify in their complaint the factual basis for their LUTPA claim. The Court reads the complaint as asserting that defendants' alleged refusal to allow Guidry to retain his interest in certain insurance policies constitutes a violation of LUTPA.[55] But this allegation is derivative of plaintiffs' breach of contract claim, as that claim is described in plaintiffs' opposition to defendants' motion.[56] Under this reading of the complaint, plaintiffs assert that defendants engaged in unfair trade practices because they refused to honor their obligations in the agency agreement. These alleged actions are not sufficiently egregious to state a claim under LUTPA, because the statute "does not provide an alternate remedy for simple breaches of contract." *Cheramie Servs., Inc.*, 35 So. 3d at 1060 (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)).

Nor does the October 31, 2017 letter from Stone to Guidry create a cause of action for plaintiffs under LUTPA.[57] The letter simply reiterated the terms of the agency agreement and the agreement's supplement, and stated

---

[55] *See id.* ¶¶ 14, 21.
[56] *See* R. Doc. 22 at 6-7.
[57] *See* R. Doc. 17-5.

that Guidry would continue to receive commissions on any insurance policies that he chose to retain after his termination.[58]  Defendants' alleged change of position from the statements in this letter is thus not an egregious action creating liability under LUTPA.  Any alleged change in course would be merely redundant of plaintiffs' claims that defendants breached the terms of the agency agreement.  Because that alleged breach cannot subject defendants to liability under LUTPA, plaintiffs' unfair trade claim is dismissed with prejudice.

### D.    Tortious Interference with Contract

Plaintiffs' claim for tortious interference with contract must also be dismissed.  First, Louisiana courts and federal courts applying Louisiana law have made clear that claims for tortious interference with contract cannot be maintained against corporate defendants.  The Louisiana Supreme Court recognized a narrow cause of action of tortious interference with contract in *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989).  The court in *Spurney* held that the claim could be maintained against a corporate officer if a plaintiff had a contract or legally protected interest with the officer's corporation, the officer knew of the contract, and the officer intentionally

---

[58]    R. Doc. 17-5; R. Doc. 22-3 at 154.

and without justification caused the corporation to breach the contract and damage the plaintiff. *Id*. at 234. But Louisiana courts have not expanded the limited scope of *Spurney* to other situations, *see Petrohawk Properties, L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 395 (5th Cir. 2012) (collecting cases), and have continually held that there can be no claim for tortious interference with contract against a corporate entity itself. *See, e.g.*, *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 536 (E.D. La. 2007) (holding that tortious interference with contract "cannot be maintained against a corporate entity defendant") (citing *Tech. Control Sys., Inc. v. Green*, 809 So. 2d 1204, 1207 (La. App. 3 Cir. 2002)); *Boudreaux v. OS Restaurant Servs., LLC*, 58 F. Supp. 3d 634, 638-39 (E.D. La. 2014) (dismissing tortious interference with contract claim against corporate defendant). In light of this precedent, plaintiffs cannot assert their claim against Allstate directly, because it is a corporate entity. *Restivo*, 483 F. Supp. 2d at 536.

Second, plaintiffs cannot maintain this claim against Stone or Caminita, because plaintiffs do not allege that either defendant is a corporate officer. Plaintiffs allege that Stone was the territorial sales leader for Allstate,

and that Caminita was Guidry's sales manager.[59]  *Spurney* limited this cause of action to claims asserted against corporate officers.  538 So. 2d at 234. State and federal courts applying the standard articulated in *Spurney* have accordingly dismissed claims asserted against individuals who are not corporate officers, regardless of the level of responsibility or influence they may have in the corporation.  *See, e.g.*, *Mountain States Pipe & Supply Co. v. City of New Roads, Louisiana*, No. 12-2146, 2013 WL 3199724, at *5 (E.D. La. June 21, 2013) (dismissing claim against city's contractor and designated agent for a public works project); *M & D Mineral Consultants LLC v. Wenti Li*, No. 12-2082, 2013 WL 883689, at *3-4 (W.D. La. Mar. 7, 2013) (dismissing claim against manager of limited liability company); *Spears v. American Legion Hosp.*, 780 So. 2d 493, 496-98 (La. App. 3 Cir. 2001) (dismissing claim against ad hoc committee of the corporation, despite evidence that the committee wielded "a significant amount of power and influence" and pressured the Board of Directors to terminate the plaintiff's contract).  Because plaintiffs do not allege that Stone and Caminita are corporate officers of Allstate, plaintiffs' claim is dismissed with prejudice.

---

[59]    R. Doc. 1-2 at 6 ¶¶ 10-11.

### E. Conversion

Conversion is a cause of action for "any wrongful exercise or assumption of authority over another's goods" in derogation of that person's "possessory rights." *Duhon v. Briley*, 117 So. 3d 253, 261 (La. App. 4 Cir. 2013). Conversion is frequently discussed in connection with movable property or other chattel. *See, e.g.*, *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998) (listing seven instances in which an unlawful conversion is committed). Conversion is an intentional tort, but the intent required "is not necessarily that of conscious wrongdoing." *La. State Bar Ass'n v. Hinrichs*, 486 So. 2d 116, 121 (La. 1986). "It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* (noting that "mistake of law or fact is no defense"). To prevail on a conversion claim under Louisiana law, plaintiffs need only prove that (1) they owned or had the right to possess some property; (2) defendants' misuse of the property was inconsistent with plaintiffs' right of ownership; and (3) the misuse constituted a wrongful taking. *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986).

Plaintiffs have adequately pleaded a claim for conversion. They allege that Guidry was "afforded the option to sell his interest in any flood policies or to retain them as policies he owns."[60] Guidry allegedly "opted to retain his flood policies and expected . . . to continue to receive" the commission due under those policies, as Allstate promised in its termination letter.[61] But plaintiffs allege that defendants nevertheless transferred the policies Guidry intended to retain to other Allstate agents, and that plaintiffs never received any of the commission associated with the policies.[62] Plaintiffs thus plead that they had a possessory right to the commission due under the insurance policies Guidry intended to retain, but that defendants wrongfully misappropriated those funds. *See id.*

Plaintiffs' contention that they had property rights in the insurance policies—and thus the commissions due under the policies—is supported by the agency agreement. The agreement states that it incorporates the supplement to the agreement in its entirety.[63] The supplement to the agreement states that any agent terminated "will be paid for Allstate Flood

---

[60]    *Id.* at 7 ¶ 14.
[61]    *Id.* ¶ 15; R. Doc. 17-5 at 2.
[62]    R. Doc. 1-2 at 7-8 ¶¶ 21-22.
[63]    R. Doc. 17-2 at 1.

Insurance business in process at the time of termination of the agent's" agreement.[64] The supplement further states that unless the agent's policies are sold, "the agent maintains a commission interest in agency bound flood policies produced until the first policy renewal after the agent's termination date."[65] The agreement thus shows that plaintiffs could plausibly have had a possessory right to the commission due under the insurance policies Guidry sought to retain, at least until the first date of renewal for those policies. Plaintiffs' factual allegations are thus sufficient to state a claim for conversion.

Defendants argue that plaintiffs' conversion claim must be dismissed because plaintiffs fail to allege that defendants have misappropriated any "movable property."[66] In other words, defendants contend that any alleged interference in plaintiffs' economic interest in the insurance policies is not cognizable as a claim for conversion, because plaintiffs do not allege that defendants misappropriated their physical property.[67] Although plaintiffs do not artfully plead this claim, the facts that they include in their first

---

[64] R. Doc. 22-3 at 154.
[65] *Id.*
[66] R. Doc. 17-1 at 14-15.
[67] *Id.*

complaint—which were incorporated into their supplemental complaint[68]—amount to an allegation that defendants have wrongfully misappropriated the funds due under the insurance policies.  Plaintiffs allege that they had a possessory interest in the "commission[s]" associated with the insurance policies they sought to retain.[69]  They further allege that defendants nevertheless transferred those policies to other Allstate agents,[70] and that as a result plaintiffs were deprived of the "commission[s]" due to them.[71]  Fifth Circuit and Louisiana courts have recognized that money allegedly owed to a plaintiff pursuant to an agreement is a type of property interest that can serve as the basis for a conversion claim.  *See, e.g.*, *Chrysler Credit Corp.*, 783 F.2d at 484 (failure to pay plaintiff proceeds from the sale of vehicles owed to plaintiff under the terms of a mortgage agreement could constitute conversion); *La. Health Care Grp., Inc. v. Allegiance Health Mgmt., Inc.*, 32 So. 3d 1138, 1142-43 (La. App. 3 Cir. 2010) (failure to surrender funds owed to plaintiff under the terms of a contract could constitute conversion).  When drawing all reasonable inferences in plaintiffs' failure—as the Court must at

---

[68]     R. Doc. 15 at 1 ¶ 1.
[69]     R. Doc. 1-2 at 7 ¶ 15.
[70]     *Id.* ¶ 21.
[71]     *Id.* at 7-8 ¶ 22.

this stage of the proceedings—plaintiffs have adequately stated a claim for conversion.  *Lormand*, 565 F.3d at 232.

## IV.  CONCLUSION

For the reasons stated above, defendants' motion to dismiss the complaint is DENIED IN PART and GRANTED IN PART.  Plaintiffs' claims for retaliation, unfair trade, and tortious interference with contract are DISMISSED WITH PREJUDICE.  Plaintiffs' claim for breach of contract is DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 1st day of March, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE